IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ANGELA DEBOSE,                          )
                                        )
    Plaintiff,                          )
                                        )
v.                                      )       CASE No.: 4:22cv439-RH-MAF
                                        )
UNIVERSITY OF SOUTH FLORIDA             )
BOARD OF TRUSTEES,                      )
                                        )
    Defendant.                          )
                                        )
_____/

## OBJECTIONS AND EXCEPTIONS TO MAGISTRATE'S REPORT

Plaintiff Angela DeBose responds to the Magistrate's Report and Recommendation, (Doc. 24), and files the following Objections and Evidence against the Magistrate's recommendation to grant Defendant's Motion to Dismiss, (Doc. 11).

### Objection 1:  A Case Management Scheduling Order should have been issued at the onset of the case.

Federal Rule of Civil Procedure 16(b) assures that the judge will take some early control over the litigation, even when its character does not warrant holding a scheduling conference. Pursuant to Federal Rule of Civil Procedure 16(b)(2) and (3), district courts must enter scheduling orders to establish deadlines for, among other things, "to file motions" and "to complete discovery." Fed.R.Civ.P. 16(b)(2), (3). "A schedule shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." Fed.R.Civ.P. 16(b). The scheduling order "shall control the subsequent course of the action unless modified by a subsequent order." Fed.R.Civ.P. 16(e). Scheduling orders "are the heart of case management," *Koplve v. Ford Motor Co.*, 795 F.2d 15, 18 (3rd Cir. 1986), and are intended


FILED USDC FLND TL
APR 13 '23 PM 2:12

to alleviate case management problems. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). A "scheduling conference order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded without peril." *Johnson*, 975 F.2d at 610.  Finally, a trial court possesses "inherent power" to control its docket and calendar. *Landis v. North American Co.*, 299 U.S. 248, 254-255, 57 S.Ct. 163, 165-166 (1936); *Mediterranean Enterprises, Inc. v. Ssangyong Constr. Co., Ltd.*, 708 F.2d 1458, 1465 (9th Cir. 1983).

Rule 16 of the federal rules of civil procedure provides in pertinent part:  Except in categories of actions exempted by local rule, the district judge—or a magistrate judge when authorized by local rule—must issue a scheduling order.  The judge must issue the scheduling order as soon as practicable, but unless the judge finds good cause for delay, the judge must issue it within the earlier of 90 days after any defendant has been served with the complaint or 60 days after any defendant has appeared.  FED. R. CIV. P. 16.  The Court failed to issue a Case Management Scheduling Order in compliance with Rule 16.  Because there was no order, DeBose has been deprived of the right to join other parties, amend the pleadings, complete discovery, and file motions.

**Objection 2:   The failure to allow discovery gave the Defendant an indefinite stay or protective order.**

The District Court should have afforded Plaintiff an opportunity to take limited discovery and justify her claim of justiciability at a hearing. Before dismissing a case for want of jurisdiction, a court should permit the party seeking the court's intervention to engage in the discovery of facts supporting jurisdiction. *Kamen v. American Tel. Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986); *Williams v. Casey,* 657 F.Supp. 921, 925 (S.D.N.Y. 1987). Failure to allow such discovery has been held to be an abuse of discretion. *Majd-Pour v. Georgiana Community Hosp., Inc.,* 724 F.2d 901, 903 (11th Cir. 1984). Particularly where the facts supporting jurisdiction are

complicated, discovery and the taking of oral testimony is advisable before a motion to dismiss for lack of jurisdiction is granted. *Williamson v. Tucker,* 645 F.2d 404, 414 (5th Cir.) *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). *See United States v. SCRAP,* 412 U.S. 669, 689, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973) (where plaintiffs allege a "specific and perceptible harm" which defendants dispute, the proper course is for defendants to move for summary judgment on the issue of justiciability and demonstrate to the court that no genuine issue of fact exists.)

## Objection 3:  The Plaintiff should not be deprived of the right to amend at least once.

A plaintiff, however, "must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice" where a more carefully drafted complaint might state a claim. *Bank v. Pitt,* 928 F.2d 1108, 1112 (11th Cir. 1991) (emphasis added) overruled in part by *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc). This is still true where the plaintiff does not seek leave until after the district court renders final judgment. *Bank,* 928 F.2d at 1112. In *Wagner,* we overruled our decision in *Bank,* holding that "[a] district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner,* 314 F.3d at 542. We noted, however, that our decision "intimate[d] nothing about a party proceeding pro se." *Id.* at 542 n.1.  Finally, when addressing a pro se complaint, a district "court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir. 1991).

Rule 15 of the federal rules of civil procedure allows the Plaintiff to amend her complaint one time within 21 days of serving the original complaint or at any point before the defendant

answers the complaint.  The rule clearly provides that a plaintiff "may amend h[er] *pleading* once as a matter of course at any time before a *responsive pleading* is served." A *responsive pleading* does not include a *motion to dismiss*. See *Camp v. Gregory*, 67 F.3d 1286, 1289 (7th Cir. 1995), cert. denied, 116 S.Ct. 2498 (1996).  Rule 15 provides that leave to amend shall be freely given "when justice so requires." FED. R. CIV. P. 15(a)(2).

## Objection 4: The Magistrate failed to limit its review to the four corners of the complaint.

In deciding a motion to dismiss, the Court's analysis is limited to the four corners of the plaintiff's complaint and the attached exhibits. *Grossman v. Nationsbank*, 225 F.3d 1229, 1231 (11th Cir. 2000). The Court must also accept the plaintiff's well pled facts as true and construe the complaint in the light most favorable to the plaintiff. *Caravell v. American Airlines, Inc.*, 315 F. Supp. 2d 1346, 1348 (S.D. Fla. 2004) (citing *United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1236 (11th Cir. 1999) (en banc)).

## Objection 5:  The Court should not dismiss a pro se complaint when a liberal reading of the complaint gives any indication that a valid claim might be stated.

We review de novo the district court's Rule 12(b)(6) dismissal of [plaintiff's] complaint. *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). Thus, we accept all the material allegations of the complaint and will not affirm the dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of h[er] claim which would entitle h[er] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "This rule applies with particular force where the plaintiff alleges civil rights violations or where the complaint is submitted pro se." *Chance*, 143 F.3d at 701.  A motion to dismiss a complaint should not be granted if the factual allegations are "enough to raise a right to relief above the speculative level." *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Nevertheless, a complaint will survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely." *Id*.  In *Tuggle*

*v. Maddox*, 60 So. 2d 158 (Fla. 1952), the Florida Supreme Court was asked to consider a motion to dismiss for "failure to state a claim * * upon which relief [could] be granted" and a motion to strike requesting that "any redundant, immaterial, impertinent, or scandalous matter" be stricken, or that the court could eliminate such matter of its own initiative. *Id.* The court did not decide the fundamental question of whether one may recover in such circumstances because of the irregular procedure followed in the trial court in arriving at the judgment—namely the correctness of the court's dismissal "Of Its Own Motion and Without Leave To Amend * * *". *Id.* The court determined error was committed and reversed.

## Objection 6:  The Magistrate has failed to construe the alleged facts as true or in a light favorable to the plaintiff as the non-moving party.

The report states that Plaintiff pro se filed a complaint for post-employment discrimination/ retaliation "for continued post-employment discrimination/retaliation through adverse actions designed to interfere with her employment, over the course of seven (7) years after her termination." The report and other documents issued by the Court have emphasized this statement by offsetting it in quotes, as though it should not be accepted as true or be believed.  We review de novo a district court's dismissal for failure to state a claim, accepting all properly alleged facts as true and construing them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir, 2012). We construe liberally pro se pleadings. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Likewise, summary judgment is appropriate where there is no genuine issue of material fact, and "the moving party is entitled to a judgment as a matter of law." Federal R. Civ. P. 56 (c). The court must consider all evidence in the light most favorable to the non-moving party, and "resolve all reasonable doubts in favor of the non-moving party." *Earley v. Champion Int'l*, 907 F.2d 1077, 1080 (11th Cir. 1990).

**Objection 7:   The Report infers that post-employment discrimination is not a legitimate claim.**

Title VII of the Civil Rights Act and the Age Discrimination in Employment Act prohibit retaliation from employers against their former employees after they have been fired and seek legal action against it. In employment law parlance, this type of targeting is called "post-employment" retaliation. Plaintiff exhausted her administrative remedies before pursuing a claim in court and was issued a Right To Sue Letter ("RTSL") on September 8, 2022, giving Plaintiff 90 days to file a lawsuit based on the charge.[1] The report does not acknowledge this or the seriousness and/or legitimacy of the Plaintiff's claims.

**Objection 8:  The Report disregards the Plaintiff's substantial evidence.**

In considering the Defendant's Motion to Dismiss, the Report does not discuss or give any consideration to the Plaintiff's evidence. The Report's only reference to evidence is as follows: She [DeBose] further contends that she was not "treated fairly in the" Middle District and was "falsely accused of vexation, against the clear court records and the great weight of the evidence." The Supreme Court has held, The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The Report does not make any mention of the Plaintiff's substantial evidence—specifically 2,725 pages of emails

---

[1] In June 2019, the U.S. Supreme Court unanimously ruled federal courts can hear discrimination claims under Title VII of the Civil Rights Act even if they are not first brought to the U.S. Equal Employment Opportunity Commission (EEOC) or comparable state agency.

between Defendant USFBOT and Plaintiff's employer, Florida Polytechnic University ("Florida Poly"), that undisputedly exist, blacklisting DeBose. The complaint alleges that the Defendant and Florida Poly entered into an agreement(s) concerning the Plaintiff that was designed to interfere with [DeBose's] employment. The agreements exist and are direct evidence of USFBOT's conspiracy and retaliation. See *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997); see also *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166 (2d Cir. 2005). The Eleventh Circuit notes "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Earley v. Champion Int'l*, 907 F.2d 1077, 1080 (11th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). The Court denied the Plaintiff's motion to preserve this evidence or enforce a federally served subpoena compelling the documents from nonparty Florida Poly.

## Objection 9:  The Plaintiff had a right to bring the suit to any eligible forum.

The Magistrate's Report emphasizes that Plaintiff acknowledged her complaint would be properly filed in the Middle District of Florida. The Magistrate Report misconstrues Plaintiff statement as some sort of admission that the Northern District or any other United States District Court would therefore be an improper forum. The Magistrate's Report overlooks the simple fact that the gist is, Plaintiff was not forum-shopping. Plaintiff filed in the Northern District as an alternative available forum, not having a forum in the jurisdiction where she resides.

The venue provision contained within Title VII, states in pertinent part. as follows:

**Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action *may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed,* in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any**

**such district, such an action may be brought within the judicial district in which the respondent has his principal office.**

42 U.S.C. § 2000e-5(f)(3) (emphasis added). In *Thomas v. Rehabilitation Services of Columbus, Inc.,* 45 F. Supp. 2d 1375 (M.D. Ga. 1999), The court there first conducted an analysis under § 1404(a) (as discussed below) and found that public policy interests in maintaining the plaintiff's Title VII case in the forum of her choice.  The court found that the plaintiff's choice of forum essentially trumped the parties' private forum-selection agreement, etc.  Essentially, the court held that the petitioner's right to bring the suit in any eligible forum is a right of sufficient substantiality to be included within the Congressional mandate of § 5 of the Liability Act.

**Objection 10:  Dismissal rather than transfer is not in the interest of justice.**

Section 1404(a) of Title 28 provides that: "for the convenience of parties and witnesses, in the interest of justice, a district may transfer any civil action to any other district where it might have been brought." Any party, including plaintiff, may move for a transfer under 28 U.S.C. § 1404(a). *I-T-E- Circuit Breaker Co. v. Regan*, 348 F.2d 403 (8th Cir. 1965); A party may move for transfer, even if it has waived any objection to venue. *Montgomery Ward & Co. v. Anderson Motor Service, Inc.*, 339 F. Supp. 713, 718 n.3 (W.D. Mo. 1971). The court may also transfer an action sua sponte. *Lead Industries Association, Inc. v. Occupational Safety and Health Administration*, 610 F.2d 70, 79 n.17 (2d Cir. 1979).  While 28 U.S.C. § 1404(a) contains no time limit for the filing of a motion, the motion may be denied if the passage of time or any delay causes undue prejudice or is considered dilatory. *See American Standard, Inc.*, 487 F. Supp. at 261, and cases cited. "The moving party has the burden of proof, and must make a convincing showing of the right to transfer." *Id.*  The power of the court to transfer is limited to those districts or divisions where the case "might have been brought." 28 U.S.C. § 1404(a); *American Standard*, 487 F. Supp. at 261. Thus, a transfer would be denied where some defendants would not be subject to

jurisdiction or where the venue would be improper in the transferee forum as to any defendant. See *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960); *In re Fine Paper Antitrust Litigation*, 685 F.2d 810, 819 (3d Cir. 1982), cert. denied, 459 U.S. 1156 (1983); *Security State Bank v. Bat*y, 439 F.2d 910, 912 (10th Cir. 1971); *Lamont v. Haig*, 590 F.2d 1124, 1131 n.45 (D.C. Cir. 1978). One of, if not the most important factors to be considered, is that of convenience of the witnesses. Another of the very important factors is the "interest of justice." "The factor of the convenience of parties and witnesses must also be measured in terms of the interest of justice." See American Standard, 487 F. Supp. at 264.

A 12(b)(3) motion to dismiss for improper venue must be filed before the answer. A motion to transfer venue may be filed at any time. "Unlike a motion to dismiss for improper venue under Rule 12(b)(3), a motion to transfer venue under Section 1404(a) is not a 'defense' that must be raised by pre-answer motion or in a responsive pleading." A case may be transferred under § 1404(a) if "(1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice." *See Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977-78 (7th Cir. 2010). All three requirements are satisfied here.

**Objection 12:  The Court should not grant a forum non conveniens dismissal unless there is another forum that could hear the case and potentially recover damages.**

Forum non conveniens refers to a court's discretionary power to decline to exercise its jurisdiction where another court, or forum, may more conveniently hear a case. Dismissing a case on forum non conveniens grounds is not a bar for res judicata purposes and, therefore, does not prevent a plaintiff from re-filing their case in the more appropriate forum. This doctrine may be invoked by either the defendant, or sua sponte by the court. Even if a plaintiff brings a case in an inconvenient forum, a court will not grant a forum non conveniens dismissal unless there is

another forum that could hear the case and potentially recover <u>damages</u>. Courts typically use a 2-part test to determine whether they will grant a defendant's forum non conveniens motion. The first part is a <u>balancing test</u> of both private and public factors, and the second part looks at what adequate alternative courts are available.

- Balancing Test
  - Private Factors
    - Ease of access to evidence
    - Interest of the two parties in their connections with the respective forums
    - The plaintiff's chosen court would be burdensome to the defendant
    - If a court finds this factor to be true, then that is often sufficient to dismiss the case and accept a forum non conveniens claim
    - Ease of obtaining witnesses
    - Enforceability of judgment
- Adequate Alternative Inquiry Test
  - The defendant must offer an alternate court that is able to hear the case
  - The alternate court must have the ability to provide a remedy to the plaintiff

A court will typically only invoke forum non conveniens sua sponte if it meets a 2-step test:

1. The court is a seriously inappropriate forum.
2. There is a substantially more appropriate court that is available for the plaintiff's claim.

The Supreme Court considered forum non conveniens in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981). In that case, the Court held that so long as there was a remedy available in the alternate forum, it did not matter if the remedy was clearly insufficient. However, lower courts do not strictly follow this rule. Instead, they usually consider the adequacy of the alternative forum's remedy as another factor to be balanced when deciding whether to grant a forum non conveniens dismissal.  The Supreme Court has heard two cases on the issue of forum non conveniens in recent years:  In *Sinochem International Co. Ltd. v. Malaysia International Shipping Corp*, the Supreme Court held that that a federal court may hear and pass a ruling on a forum non conveniens motion even if that court does not necessarily have subject-matter jurisdiction or

personal jurisdiction over the case in front of the court. The Court decided that while courts typically need to consider personal jurisdiction and subject-matter jurisdiction before hearing a case on the merits, this procedure does not necessarily apply when considering non-merit issues. The second case was *Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas,* which determined that courts should use 28 U.S.C. 1404(a), which allows for the transfer of cases between jurisdiction, for the purposes of granting a forum non conveniens motion.

**Objection 13:  The Plaintiff's Choice of Venue Should Rarely be Disturbed.**

*See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").

**Objection 14:  The Magistrate's Report does not identify the issues allegedly precluded in this lawsuit.**

*Res judicata* does not apply where the facts giving rise to the second case only "arise after the original pleading is filed in the earlier litigation," *Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992).  One of the first problems faced when there is a claim of issue preclusion is that of determining what issues were faced and necessarily decided by the first court; that is, on what issues there is a possibility of preclusion.  Exactness in the determination of issues may be crucial in the matter of preclusion.  The Defendant and the Court have merely pointed out that the claims are the same or similar, which would be true of a Title VII case.  However, the issues litigated are not the same.  Res judicata does not apply here because (a) the parties here are different from the parties in the prior case, (b) the FAC alleges new facts that were not considered by any judge or jury.  The prior litigation did not involve or concern DeBose's employment at Florida Poly.  In 2020 and 2021, Greenberg Traurig, P.A. and Richard McCrea entered contracts and agreements with Florida Poly on behalf of USFBOT, specifically concerning DeBose's

employment.   The Plaintiff has requested the documents, which are prima facie evidence of their agreement, (See Exhibit A).  Florida Poly has not provided the documents.

## Objection 15:  The Injunction Order is not backed by competent substantial evidence and should not be given deference.

Courts in the Eleventh Circuit "will not disturb a clearly articulated finding supported by substantial evidence." *Mitchell v. Comm'r Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (citing *Foote*, 67 F.3d at 1562).  A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548-49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom., Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986).  Additionally, the Eleventh Circuit has held, "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or bases the decision upon findings of fact that are clearly erroneous." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010) (quotation marks omitted).

The Middle District Court followed an irregular procedure, held no proceedings, and locked DeBose out of Court before and after the Injunction Order.  The state courts locked DeBose out of court by years of delay and subsequent assignment of her cases to an incapacitated judge.  An unauthorized trespasser judge, employee of USFBOT, and defendant and appointed paid mediator to DeBose's presiding judge, unlawfully intervened and issued final judgments contrary to the evidence, without notice or a hearing.  The judge assigned to replace the deceased incapacitated judge issued a retaliatory order administratively closing DeBose's case after a news broadcast exposed the sham court that operated under the seriously ill judge.  When DeBose objected, the newly assigned judge issued an injunction order without the required injunction hearing.

The Northern District has followed an irregular procedure and likewise locked DeBose out of court.  The court records in Plaintiff's cases demonstrate her filings (1) had a reasonable factual

basis; (2) were based on a legal theory or theories that had a reasonable chance of success or that could be advanced as a reasonable argument to change existing law; and (3) were not filed in bad faith for an improper purpose.  The federal Injunction Order has the following g deficiencies:

(a) The District Court Order refers to DeBose as "a lawyer admitted to practice law in Wisconsin."

**Supplement(s): Record of the Wisconsin Bar to reflect that DeBose's practice setting has been historically set at "*not practicing*" since her admission.**

(b) The District Court Order states, "Throughout the action, DeBose, appearing *pro se* repeatedly moved for sanctions and asserted that USF had destroyed certain employment documents."

**Supplement(s): (i) Notices of appearance by attorneys Charlotte Fernee Kelly and James M. Thompson and Kathryn C. Hopkinson, Thompson Legal Services, LLC. ("Thompson Legal") in *DeBose v. USF Board of Trustees, et al.*, No. 8:15-cv02787-EAK-AEP (M.D. Fla.),[2] to show that DeBose was represented by attorneys licensed to practice in the State of Florida; (ii) TRANSCRIPT of Hearing held on 03-21-17 before Judge Anthony E. Porcelli to show that the district court was "confident" that if DeBose did not retain new counsel, she could represent herself and proceed in the case as a pro se[3]; (iii) Second Amended Complaint[4] and (iv) TRANSCRIPT of Motion Hearing held on February 8, 2017 before Magistrate Judge Anthony E. Porcelli to show Fernee Kelly and Thompson Legal filed papers concerning sanctioning the University of South Florida Board of Trustees ("USFBOT") and its counsels for withholding and/or destroying DeBose's contracts, employment files, and ESI.**

(d) The District Court stated there were "several hearings" but omitted that these were motion hearings and that DeBose's requests for evidentiary hearings allowing oral testimony were rejected.[5]

**Supplement(s):
(i) ENDORSED ORDER denying 111 Motion to allow oral testimony at hearing. Plaintiff may not present testimony of witnesses at the hearing scheduled on March 21, 2017. Signed by Magistrate Judge Anthony E. Porcelli on 3/13/2017;**

---

[2] Renumbered 8:15-cv02787-VMC-AEP.
[3] Page 60:4-14.
[4] Page 20, ftn. 1.
[5] 02-08-17 Transcript, DeBose and witness, Verna Glenn, not allowed to testify.

**(ii) 06-23-2020 Order denying MOTION for Miscellaneous Relief, specifically for Evidentiary Hearing With Witness Testimony in Independent Action for Relief from Judgment; and (iii) TRANSCRIPT of final pretrial conference held on August 14, 2018 before Magistrate Judge Anthony E. Porcelli where magistrate declined to allow oral testimony on review of DeBose's motion to strike sham affidavits.**

(e) The District Court recites in its Injunction Order in DeBose's Federal Torts Claims Act ("FTCA") case (1) that USF's destruction of the documents resulted from policy and revealed no bad faith and (2) that DeBose failed to show the importance of the destroyed documents to DeBose's burden of proof.

**Supplement(s): (i) Deposition of Barbara Lamphere** to show the destruction of active and former employees' employment files was a first-time occurrence, was not the result of university policy or practice; **(ii) Deposition of Delonjie Tyson** to show that Lois Palmer was not the Registrar when the files were put in bins for destruction; **(iii) Deposition of Verna Glenn** that staffs were not notified to retrieve their documents and that the documents did not duplicate documents retained by HR; **(iv) Affidavit of Zayna James** to show that DeBose's records were included with the files sent out for shredding in the summer of 2015; **(v) Affidavit of Marquisha Wilson**, that the ordered destruction of DeBose's employment files and the other files came from DeBose's superiors a short time after she was terminated.

(f) The District Court states, "The district court granted summary judgment for Ellucian on all claims."

**Supplement(s): (i) 06-25-18 Notice of Rule 11 Sanctions; (ii) Motion for Sanctions; and (iii) Affidavit / Attachments 1-4 for Sanctions** to show that Ellucian under a state court mandate in 17-CA-2114 produced 249 pages of documents withheld from discovery in DeBose's federal case—failing to comply with three motions to compel documents, *granted in part*, by district court magistrate Porcelli.

(g) The District Court stated USF was granted summary judgment "on some claims" referencing an Order and 5/23/2018 Hearing Transcript.

**Supplement(s): (i) TRANSCRIPT of Hearing held on 05-23-17 before Judge Anthony E. Porcelli; and (ii) 09-29-17 Summary Judgment Order and Opinion** to show there was no hearing on 5/23/2018 (evinced also by the docket), there was no summary judgment hearing period, and there was no discussion in the 05-23-17 hearing that would explain or support the order and opinion of the district judge to exclude 550 pages of summary judgment evidence, that would exclude DeBose's fully-briefed summary judgment pleadings, that would cause the district judge to exclusively rely on pleadings submitted by

defendants' representatives, that would exclude review of DeBose's fully-briefed cross motion for summary judgment against USFBOT, and that would explain dismissal of DeBose's gender discrimination, promotion discrimination, disparate impact discrimination, conspiracy, and breach of contract claims at summary judgment.

(h) The District Court's Injunction Order misstates the evidence at trial.

**Supplement(s): TRANSCRIPTS of JURY TRIAL - DAYS 1-11 held on September 10-26, 2018 before District Judge Elizabeth A. Kovachevich** and admitted trial evidence to disprove statements in the Injunction Order (e.g., trial evidence that shows DeBose was described as being very professional; that DeBose filed complaints of discrimination in June 2014 before the promotion of the "other employee" referenced in the District Court Order; that DeBose's superiors testified that "little girl" was not language that DeBose ever used or was thought to use; and that the real reason for the reprimand was because DeBose "filed complaints".

(i) The District Court Order states, the Ellucian consultant reported to USF that DeBose

was "uncollaborative and resistant to change."

**Supplement(s): (i) ORDER denying 251 Defendant University of South Florida Board of Trustees' Motion for Leave to Take Videotaped Deposition** *De Bene Esse***; (ii) Affidavit of Andrea Diamond (federal court); (iii) Affidavit of Andrea Diamond (state court); and (iv) Deposition of Andrea Diamond (federal court)** to show that Diamond's affidavits tell conflicting stories and are contradicted by her deposition, that Diamond's deposition does not use the words "uncollaborative" or "resistant to change", and that Diamond did not show in her deposition personal or present knowledge to testify[6].

(j) The District Court stated in the Injunction Order that because of Diamond's report, etc. USF decided not to renew DeBose's employment. In the introductory paragraph, the District Court also stated DeBose, "lost her *pro se* Title VII action against the University of South Florida."

**Supplement(s): Unanimous Jury Verdict finding USFBOT was motivated by Race and retaliated because of DeBose's protected activities. The trial transcripts reflect testimonial evidence, exhibits, etc. that supported the verdict. USFBOT lost and it was not closed—repeatedly offering a mistrial.**

---

[6] Diamond, subpoenaed, did not appear for trial. District judge admitted her entire deposition testimony and did not order contempt of court sanctions against Diamond or Ellucian.

(k) The District Court stated that the jury found that race served as a "motivating factor" but found that USF would have fired DeBose regardless of race but omitted that DeBose objected to misleading jury instructions (i.e., that the "same decision" could be "*for any reason at all*").

**Supplement(s): (i) DeBose's 09-09-18 Objections to the Jury Verdict form and (ii) 09-21-18 and USFBOT's proposed jury form**.

(l) The District Court stated that after the verdict, the district court granted USF's renewed motion for judgment as a matter of law.

**Supplement(s): (i) 09-26-18 Order Denying Judgment as a Matter of Law and (ii) 10-05-2018 ENDORSED ORDER granting in part and denying in part USFBOT's 479 Motion to modify final judgment. To the extent that the requests made in Defendant's motion are inconsistent with 482 the Court's amended final judgment, the motion is DENIED. Signed by Judge Elizabeth A. Kovachevich on 10/5/2018; and 10-29-2018 Motion for JMOL by defendant USFBOT to show an irregular procedure to unlawfully allow USFBOT to file three motions for JMOL—part A before the verdict, part B after the verdict as a veiled Motion to Modify the Judgment, and a third motion for JMOL on October 29, 2018.**

(m) The District Court's Order states, "The Eleventh Circuit affirmed in full and held that DeBose proffered neither evidence showing that her internal discrimination complaint caused her termination nor evidence rebutting USF's non-discriminatory reasons for termination."

**Supplement(s): (i) Eleventh Circuit Order consolidating appeals 18-14637 and 19-10865 and (ii) Eleventh Circuit Opinion to show the order speaks for itself in discussing the summary judgment brief and not the district court decision overturning the jury verdict and denying DeBose, the verdict winner, a new trial.**

(n) The District Court's Injunction Order observes without caution that "The Supreme Court denied certiorari."

**Supplement(s): SCOTUS's explanation that "The vast majority of petitions are simply denied by the Court without comment or explanation. The denial of a petition for a writ of certiorari signifies only that the Court has chosen not to accept the case for review and does not express the Court's view of the merits of the case."**

(o) The District Court Order states with omissions, "An order denied each (appealed) motion."

**Supplement(s): Eleventh Circuit Orders, state DCA orders, and transcripts/records in DeBose's federal and state cases and appeals** to show DeBose prevailed and raised meritorious arguments.

(p) The District Court states, DeBose petitioned in the Thirteenth Judicial Circuit for a writ mandating that *USF produce documents for use in the Title VII action. DeBose v. Univ. of S. Fla. Bd. of Trustees*, No. 15-CA-5663 (Fla. 13th Cir. Ct.).

**Supplement(s): State Court Records and Transcripts** to show DeBose filed public records requests in 2014 while employed at USF, before termination, before engaging the EEOC, and before any litigation. DeBose filed motions for summary judgment based on the prima facie evidence below in the Vaughn index. The District Court record shows Rice was recused before the order was issued denying mandamus relief.

### PETITIONER'S VAUGHN INDEX TO SHOW IMPROPER WITHHOLDING

| No. | Req. Date | Desc. | Resp. Date | Time Delay | Exempt? | Charge? |
|-----|-----------|-------|------------|------------|---------|---------|
| 1 | 6/23/14 | Specific Email(s) | 7/6/15 | 378 days | No | No |
| 2 | 8/16/15 | Group Emails | Not Provided | | No | $2,439 |
| 3 | 8/31/15 | Specific Email(s) | Not Provided | | No | $5,203 |
| 4 | 8/8/14 | Supervisor Emails | 9/9/15 | 398 days | No | $4,726 charge withdrawn |
| 5 | 8/5/15 | Employee-HR exit interview | Not Provided | | No | No |
| 6 | 8/12/15 | Phone Records | Deleted - USFBOT admitted it deleted the phone records | | No | No |
| 7 | 7/23/15 | Specific Current | 9/4/15 | 43 days | No | No |

| | | Employees Addresses | | | | |
|---|---|---|---|---|---|---|
| 8 | 8/3/15 | Specific Former Employee Addresses | 8/5/15 | 2 days | No | No |
| 9 | 8/13/14 | Employee Statistical Data | 3/27/15 | 227 days | No | $178 paid; $1200 later charged |
| 10 | 5/19/15 | DeBose's ESI and employment files | Deleted - Stipulation by USFBOT that it deleted DeBose's ESI and contracted with a third-party shredding company to destroy her files | | No | $9,083 |
| 11 | 6/2015 | Vendor contracts | Not provided by USFBOT 249 pages of contracts and agreements provided by Ellucian pursuant to Court Order | | No | No |

(q) The District Court states that in 17-CA-1652, (Fla. 13th Cir. Ct.), that Circuit Judge

Rice dismissed the action.

**Supplement(s): (i) State Court Records to show Holder was not a successor but improperly intervened. Substantial police evidence and transcript evidence in DeBose's favor.**

(r) The District Court Injunction Order states that Circuit Judge Holder (the successor after re-assignment) in DeBose's state court cases.[7]

**Supplement(s): (i) Holder profile** to show irregular procedure and that Holder was employed by USF as an adjunct professor until 2021 and had a conflict and **(ii) Tampa Bay Times article** reporting that Holder was censured in 2016 by the Florida Supreme Court for going too far and unlawfully intervening in a case involving USF; **(iii) appointment as a paid mediator in 2021 and 2022 by Judge Steven Merryday.**

(s) The District Court reports DeBose sued Ellucian, L.P. but fails to list Andrea Diamond as a named party, in Case No. 18-CA-893 (Fla. 13th Cir. Ct.) that was removed and dismissed as barred by *res judicata* because the defamation and other claims arose from the same transaction and occurrence as the claims in the Title VII action for which Ellucian received judgment.

**Supplements: (i) Original Complaint to show the Five Identities of Res Judicata Preclusion were not present. (ii) Order in favor of DeBose in Ellucian's First Removal; (iii) docket and pending motion for Default Judgment following Remand in 18-CA-893; (iv) brief arguing unlawful Second Removal by Ellucian, and (v) joint stipulations by and between DeBose and Ellucian, L.P. defendants** to show Ellucian cases and appeals were not finally or adversely decided against DeBose.

(t) On April 29, 2019, DeBose again sued USF and USF's lawyers but fails to list the other named parties dismissed by joint stipulation from the suit in the Thirteenth Judicial Circuit, *DeBose v. Univ. of S. Fla. Bd. of Trs.*, No. 19-CA-4473 (Fla. 13th Cir. Ct.), for "fraud," triggering RICO liability, etc.

**Supplements: (i) Original Complaint and (ii) joint stipulations by and between DeBose and Ellucian, L.P. defendants; (iii) Holder's profile; and (iv) Tampa Bay Times article reporting that Holder was censured in 2016 by the Florida Supreme Court** to show the Five Identities of Res Judicata Preclusion were not present, the case not fully litigated or finally or adversely determined, that Holder was employed by USF as an adjunct professor until 2021 and had a conflict; and that Holder was censured for going too far and unlawfully intervening in a case involving USF.

---

[7] The District Court record on appeal contains clear and convincing evidence that Judge Carl C. Hinson was the presiding judge in DeBose's cases since January 7, 2020 and that Holder was never assigned to the case. The District Court's Injunction Order omits any discussion about Hinson or the ABC Action News Broadcast exposing Holder and other intervenors that issued unauthorized orders.

(t) On July 25, 2022, after DeBose began this action, Circuit Judge Melissa M. Polo (the latest successor in the 2015 mandamus action) describes in detail DeBose's history of repetitive, wasteful, frivolous, and vexatious conduct in the Thirteenth Judicial Circuit and enjoins Angela DeBose "from filing further documents with this Court or with the Clerk unless the document is signed by a member in good standing of The Florida Bar." *DeBose v. Univ. of S. Fla. Bd. of Trustees*, No. 15-CA-5663 (Fla. 13th Cir. Ct. July 25, 2022) (Doc. 433).

**Supplement(s): (i) Notice of Status Conference Hearing, (ii) Motion for Status Conference Hearing, (iii) Order to Show Cause, (iv) DeBose's Response to OSC, (v) Injunction Order, (vi) Motion to Vacate; (vii) Docket to Show Polo never issued a ruling because the OSC would have had to be discharged; (viii) Hearing Transcript in Small Claims case to show the harm to DeBose, and (ix) Appellant's Affidavit, and (x) USFBOT contractor/reporter admitted that she deleted the designated zoom recording immediately after uploading the transcript. The record produced by the reporter is unreliable and reflects statements and events that did not occur. The transcript was ordered and designated by DeBose to show on appeal that she was not accorded** a due process hearing. The reporter deleted a public record, court record, and the only evidence to validate the transcript. "Due process requires that the attorney (or party) be given fair notice that his conduct may warrant sanctions and the reasons why." *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995).

**WHEREFORE,** Plaintiff respectfully asks the Court to allow the case to proceed with discovery, amendment, joining other parties, and evidentiary/motion hearings or alternatively transfer to another federal district court.

**Submitted 4/12/2023**                    Respectfully,

                                    */s/ Angela DeBose*
                                    Angela DeBose

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April **12th**, 2023, the above and foregoing was served by US postal mail for filing with the Clerk of the Court, which will send a notice of electronic filing to all counsels of record.

*/s/ Angela DeBose*
Angela DeBose
1107 W. Kirby St.
Tampa, FL 33604
Ph. 813.932.6959
awdebose@aol.com

# EXHIBIT

# A

4/11/23, 6:05 PM                    Re: Chapter 119 Public Records Request - Angela DeBose - Outlook

🗑 Delete    📦 Archive    Report        ↩ Reply    ↩ Reply all    ↗ Forward ⌄    ✉    🏷 ⌄    🏳 ⌄    ⌄

# Re: Chapter 119 Public Records Request                                    🔍 ⌄

AD   Angela DeBose                                    😊  ↩  ↩  ↗  ⋯
⚬   To: ⚬ Office of the General Counsel                    Tue 4/11/2023 10:21 AM

Please explain why there would be a charge to provide a vendor contract(s).  Have you asked
Procurement?

**From:** Office of the General Counsel <ogc@floridapoly.edu>
**Sent:** Tuesday, April 11, 2023 8:43 AM
**To:** Angela DeBose <adebose@floridapoly.edu>; Office of the General Counsel <ogc@floridapoly.edu>
**Subject:** RE: Chapter 119 Public Records Request

Hello,

We have received your request. We will forward your request to the appropriate departments and provide you with
an invoice for the estimated cost for the amount of time it will take to compile and review the requested items, if
any. Please let us know if you have any questions.

Thank you


**Office of the General Counsel**
W: 864-874-8412
ogc@floridapoly.edu | www.floridapoly.edu

**Florida Polytechnic University**
4700 Research Way, Lakeland, FL 33805
Office Location: Polk State College, Lakeland Technology Building, Room 2121, 3433 Winter Lake Rd,
Lakeland, FL 33803

Stay Connected:
_Facebook_ | _Twitter_ | _LinkedIn_ | _Website_ | **Download** _Florida Poly Mobile_

*Please note: Due to Florida's broad public records law, most written communication to or from
university employees is considered a public record. Therefore, the contents of this email, including
personal email addresses, may be subject to disclosure in the event a request is made.*

**From:** Angela DeBose <adebose@floridapoly.edu>
**Sent:** Tuesday, April 11, 2023 7:02 AM
**To:** Office of the General Counsel <ogc@floridapoly.edu>
**Subject:** Chapter 119 Public Records Request

Please provide the contracts and agreements by and between Florida Polytechnic University and
Greenberg Traurig, P.A. and/or Richard McCrea.    Thank you in advance for emailing the documents
today.

about:blank                                                                              1/1

# EXHIBIT

# B

**AFFIDAVIT of NORMA BEDELL**

STATE OF FLORIDA

COUNTY OF HILLSBOROUGH

Before me personally appeared **NORMA BEDELL,** who after being duly sworn, states as follows:

## QUALIFICATIONS OF AFFIANT

1.  My name is Norma Bedell.

2.  I am over the age of 18 and am a resident of Hillsborough, Florida.

3.  I was previously employed by the University of South Florida for approximately 25 years.

4.  I worked in various positions and personally know Angela DeBose, the Plaintiff in this action.

5.  I worked with Angela from 07/30/1999 to 07/30/2000 in the USF Office of the Registrar, well before she was terminated.

6.  In late May or early June 2020, I recall contacting Angela via her cell phone number to warn her about information I came across concerning her case against USF.

7.  I told Angela that a judge was going to jump in her case and start doing something he wasn't supposed to do to put an end to her cases against USF.

8.  I did not know all the details except that this judge wasn't a federal judge but worked for the Thirteenth Circuit Court.

9.  Angela called me at some point in early June and asked, *How did you know?* She said weird things were happening in her cases with some judge by the name of "Holder".

10. Angela said she looked him up and that he was a criminal law judge.

11. She said USF's lawyers were pretending this judge's involvement was normal or nothing to be concerned about but that he suddenly appeared and started issuing orders.

12. I told Angela I would try to get more information, but everything went cold and I couldn't find out any more information about it.

13. On July 8, 2020, I emailed Angela to tell her that I filed a grievance against my supervisor in the Registrar's Office at USF because she was discriminating and retaliating against me.

14. Angela explained that she was still upset about her cases because the judge I warned her about was still putting out orders against her.  She asked me to continue to try to find out anything else I could find out with Judge Holder.

15. The next time I emailed Angela again was on July 19th and 20 of 2020.  She seemed to be distraught because the judge did exactly what I warned her that he would do, throwing her cases out of court.

16. Angela told me that she was going to initiate some sort of (warrant) action with the Attorney General's Office against Holder for entering the illegal orders.

17. At that time, I was filing my own Equal Employment Opportunity Commission (EEOC) and Florida Commission on Human Relations (FCHR) complaint (Charge Number: 511-2021-01897) against University of South Florida Board of Trustees and hired an attorney to file my own lawsuit against USF in the United States District Court for the Middle District of Florida, Tampa Division.  My case was 8:22-cv-00443-VMC-AEP.

18. I have direct personal knowledge of the above communications between me and Angela DeBose and the information I provided her concerning the judge, Holder, and am willing to testify under oath to this same information sworn by affidavit. I am no longer employed at USF, and I have settled my own case with USF.

19. My personal opinion is that our legal and court systems are failing victims of discrimination, retaliation and retribution.  This deception is hidden from the public eye by not making USF accountable for their actions and allowing them to buy-off judges. I, myself, had to settle for much less than I could have if I had the confidence that I would have been treated fairly through the Florida court system.  I did not so I settled for much less than I should or could have.  Angela and others are also being treated unfairly and not able to legally pursue their cases against USF because of the corruption that occurs in our Florida judicial system surrounding USF. This needs to change.

Norma Bedell                                    Date: 3/23/23

**FURTHER AFFIANT SAYETH NAUGHT.**

By: _____

**NORMA BEDELL, AFFIANT**

**SUBSCRIBED AND SWORN TO** before me this _23rd_ day of March, 2023.

Notary Public in and of the State of Florida.

DEBBIE HUNTER
Commission # GG 921622
Expires October 9, 2023
Bonded Thru Troy Fain Insurance 800-385-7019

My Commission Expires: _Oct. 9, 2023_

_____
Signature of Notary Public

_____
Name of Notary Public printed



PRIORITY MAIL EXPRESS®

FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup, scan the QR code.

USPS.COM/PICKUP

PS10001000006

EP13F July 2022
OD: 12 1/2 x 9 1/2

UNITED STATES POSTAL SERVICE®

PRIORITY MAIL EXPRESS®

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)   PHONE (   )

Angela DeBose
1107 W. Kirby St.
Tampa, FL 33604

**DELIVERY OPTIONS (Customer Use Only)**
☐ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.
Delivery Options
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
  *Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)   PHONE (   )

Northern District of Florida,
Clerk of the Court
111 N. Adams St.
Tallahassee, FL
32301

ZIP + 4® (U.S. ADDRESSES ONLY)

☜ PEEL FROM THIS CORNER

For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
$100.00 insurance included.

**PAYMENT BY ACCOUNT (if applicable)**
USPS® Corporate Acct. No.    Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**
PO ZIP Code: 33604   ☐ 1-Day   ☐ 2-Day   ☐ Military   ☐ DPO
Date Accepted (MM/DD/YY): 4/12
Time Accepted: 8:45   ☐ AM   ☐ PM
Weight: ☐ Flat Rate   lbs.   ozs.

**DELIVERY (POSTAL SERVICE USE ONLY)**
Delivery Attempt (MM/DD/YY)   Time   ☐ AM   ☐ PM
Delivery Attempt (MM/DD/YY)   Time   ☐ AM   ☐ PM

Scheduled Delivery Date (MM/DD/YY): 4/13
Scheduled Delivery Time
☐ 10:30 AM   ☐ 3:00 PM

Postage: $28.75

Insurance Fee   COD Fee

Return Receipt Fee   Live Animal Transportation Fee

Special Handling/Fragile   $
Sunday/Holiday Premium Fee   $

Total Postage & Fees: $28.75

Acceptance Employee Initials

Employee Signature

LABEL 11-B, MAY 2021   PSN 7690-02-000-9996

EI 552 230 348 US

UNITED STATES POSTAL SERVICE®

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express® shipments.