IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ANGELA DEBOSE,                          )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )        CASE No.: 4:22cv439-RH-MAF
                                        )
UNIVERSITY OF SOUTH FLORIDA             )
BOARD OF TRUSTEES,                      )
                                        )
        Defendant.                      )
                                        )
_____/

## MOTION TO ALTER/AMEND THE ORDER AND CLERK'S JUDGMENT

Plaintiff, Angela DeBose, moves the Court to alter/amend the Court's Order [26] and Clerk's

Judgment [27], dismissing the Plaintiff's original Complaint, (Doc. 1). Pursuant to Federal Rule 38,

Plaintiff demanded a trial by jury.  Plaintiff did not notice, consent, or refer her civil action to a

magistrate judge pursuant to Rule 73.  The Court essentially referred the entire proceeding to its

magistrate judge without the voluntary consent of all parties. Under Rule 72, the Court may refer to

a magistrate judge for determination any matter that does not dispose of a charge or defense. Here,

the Court referred the Defendant's Motion to Dismiss and to Strike ("MTDS"), (Doc. 11),  and

implemented the Magistrate's Report and Recommendations to dismiss, without conducting any of

the required proceedings. Furthermore, it is more probable than not that the Defendant's

representative informed the Court that the Plaintiff obtained direct evidence of an agreement by and

between the University of South Florida ("USF") and Florida Polytechnic University ("FLPOLY")

through its representative Greenberg Traurig, P.A. ("GTLAW"), from July 1, 2020 to June 30, 2021,

to go after DeBose, (See Attached Exhibits 1-3).  The Plaintiff also obtained additional evidence

that shows the Defendant initiated this adverse, retaliatory action against DeBose prior to July 1,

1



FILED USDC FLND TL
APR 24 '23 PM4:06

2020 and continued its unlawful activity after June 30, 2021. USF, a party, and/or FLPOLY, presently a nonparty and DeBose's employer, used State Funds to violate Title VII and Federal Rule 11, relentlessly pursuing claims and defenses without a basis in law or fact. USFBOT's MTDS alleges there is no truth to DeBose claims or an agreement. By not ordering discovery, the Court concealed USFBOT's potential or would-be violation of Rule 37, by which it concealed and withheld the material evidence of the agreement and the 2,725 emails from discovery, in bad faith. Pursuant to Federal Rule 59(e), the Plaintiff moves the Court to alter/amend the Clerk's Judgment, reopen this case, and transfer it to another venue under § 1404 on the grounds of (1) existing controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. In support, Plaintiff states as follows:

## PROCEDURE

On December 8, 2022, Plaintiff filed her Complaint (Doc. 1). Attached to the Complaint, the Plaintiff filed her Right To Sue Letter ("RTSL") issued by the EEOC, (Doc. 1, Exhibit A, pgs. 29-30) and evidence of the existence of 2,725 emails supporting her claims that are being withheld by Florida Polytechnic University ("FLPOLY"), (Doc. 1, Exhibit B, pgs. 31-33).[1] Plaintiff sought to establish, inter alia, that the University of South Florida ("USF"), motivated by animus or ill will towards blacks/African-Americans, acted in a malicious, hostile, or damaging manner by blacklisting DeBose and making threats to her employer FLPOLY to create a hostile retaliatory work environment to force DeBose out or put an end to DeBose's employment. USF and its representatives conspired with others including FLPOLY, which initially rebuffed USF's efforts but eventually agreed to join the conspiracy, to harm DeBose professionally, economically, and legally

---

[1] DeBose requested the emails via a subpoena issued by the Middle District of Florida ("MDF") and pursuant to a Chapter 119, F.S. public records request.

so that she could not maintain litigation filed against the USF Board of Trustees ("USFBOT"), Greenberg Traurig, P.A. (GTLAW), and others.   Seeking an immediate or expeditious end to Plaintiff's post-employment discrimination/retaliation Title VII case, USFBOT moved for dismissal in the instant action, requesting other relief (i.e., to convert its motion to dismiss to one for summary judgment) on January 31, 2023,  (Doc. 25).   On February 2, 2023, without inquiry into factual disputes, the Court treated the case as if it raised pure questions of law and straightaway issued an Order [13] for Plaintiff to respond to the MTDS). Plaintiff's motions, including a motion to compel nonparty FLPOLY to purge itself of its contempt and produce the 2,725 emails to DeBose, (Doc. 17), were denied by the Court [18] on February 6, 2023. On February 15, 2023, the Plaintiff filed an Objection and a Time-Sensitive Motion for Miscellaneous Relief, (Doc. 19), of the February 6, 2023 Order [18]. Specifically, Plaintiff moved for an Order to Show Cause Why the MTDS filed by the Defendant USFBOT should not itself be stricken and also moved for reconsideration of the Order [18] in the entirety. On February 22, 2022, USFBOT responded in Opposition to the Plaintiff's motion for miscellaneous relief, (Doc. 20). On March 1, 2023, the Plaintiff filed her Response in Opposition, (Doc. 22), to the Defendant's MTDS for Failure to State a Claim and to Strike. On March 3, 2023, the Court overruled the Plaintiff's Objections to the February 6, 2023 Order and approved the Order, (Doc. 23). On March 29, 2023, the Magistrate Report and Recommendations was docketed, (Doc. 24), recommending that the Defendant's motion, (Doc. 11), be granted. On April 16, 2023, the Court issued an Order of Dismissal, (Doc. 26). On April 17, the Clerk's Judgment, (Doc. 27), was entered pursuant to the Order [26].

## ARGUMENT

Title VII of the Civil Rights Act of 1964 bans discrimination on the basis of race, religion, sex and national origin. But § 704(a) of Title VII, 42 U.S.C. 2000e-3(a) also prohibits

"discrimination" against any individual who has "opposed" any practice that Title VII forbids. The materially adverse actions taken by USFBOT (and FLPOLY) and the civil/criminal conspiracy violations by GTLAW were motivated by hostility to DeBose who objected to what she perceived to be discriminatory post-employment conduct against her for having engaged in a protected activity with the EEOC and subsequently filing suit.  The Court, while realizing the legal prohibitions on retaliation, did not in most circumstances, show an understanding that retaliation extends beyond the employee's actual employment. Some of the post-employment conduct courts have considered to be retaliatory are similar to the sort of retaliation DeBose complained of—including USFBOT blacklisting her, making threats to her employer, filing false civil claims and defenses, and filing unfounded claims for injunctive relief to deny access to the courts.

## Rule 38. Right to a Jury Trial; Demand

Rule 38 provides in pertinent part:

> (a) RIGHT PRESERVED. The right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate.
> (b) DEMAND. On any issue triable of right by a jury, a party may demand a jury trial by:
>    (1) serving the other parties with a written demand—which may be included in a pleading—no later than 14 days after the last pleading directed to the issue is served;

## Rule 59 and Rule 60

The Federal Rules of Civil Procedure allow a litigant subject to an adverse judgment to file either a motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e) or a motion seeking relief from the judgment pursuant to Fed. R. Civ. P. 60(b)." *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). Fed. R. Civ. P. 59(e) will govern when the motion for reconsideration is filed within ten days of the judgment and Fed. R. Civ. P. 60(b) will govern all other motions. *Id.*

A motion for amendment under Rule 59(e) is limited to a narrow set of circumstances: it "is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. . . . It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Van Skiver*, 952 F.2d at 1243). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* (citing *Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir. 1995)). This same standard has been applied to both Rule 59(e) motions, *see id.*; *Schlussler-Womak v. Chickasaw Tech Prod.*, 116 Fed. Appx. 950 (10th Cir. 2004) (unpublished), and Rule 60(b) motions, *see Lyons v. N.M. Dep't of Corr.*, 12 Fed. Appx. 772, 773 (10th Cir. 2001) (unpublished); *Adams v. Anderson*, 12 Fed. Appx. 910, 914 (10th Cir. 2001) (unpublished). In this case, Plaintiff has filed her motion within ten days after the Order denying Plaintiff's Motion for Sanctions. Therefore, Plaintiff's motion is timely.

## The Court followed an Irregular Procedure that was inherently inadequate to evaluate the merits of the Plaintiff's claims.

As an initial matter, the Court followed and irregular procedure, particularly in a Title VII case, not issuing a Case Management Scheduling Order and not according time for discovery under Rule 26 or Rule 56(d). The fact-finding process was fundamentally flawed. The Court granted no evidentiary hearing or other opportunity for DeBose to develop her claims. Instead of providing a forum for DeBose to present and develop evidence to establish her claims, this Court based its decisions on unproven, self-serving  factual assertions about DeBose's conduct by the Defendant.  DeBose had no opportunity to challenge the Magistrate and the Court's understanding of events which had taken place in prior years. The procedure followed was inherently inadequate to evaluate the merits of DeBose's present claims before this Court, prior proceedings, or the

5

injunction order upon which it relied. In fact, it was not a procedure at all. *See In re Murchison*, 349 U.S. 133, 138, 75 S.Ct. 623, 99 L.Ed. 942 (1955) ("Thus the judge whom due process requires to be impartial in weighing the evidence presented before him, called on his own personal knowledge and impression of what had occurred in the grand jury room and his judgment was based in part on this impression, the accuracy of which could not be tested by adequate cross-examination."); *Buffalo v. Sunn*, 854 F.2d 1158, 1165 (9th Cir. 1988) (finding error when the court relied on "personal knowledge" to resolve a disputed issue of fact).

**The fact-finding process for the Injunction Order relied upon by the Court was shown deficient and not entitled to deference.**

The Circuits have repeatedly held that where a state court makes factual findings without an evidentiary hearing or other opportunity for the petitioner to present evidence, "the fact-finding process itself is deficient" and not entitled to deference. *See Taylor v. Maddox*, 366 F.3d 992, 1001 ("If, for example, a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in an `unreasonable determination of the facts.'"); *see also Perez v. Rosario*, 459 F.3d 943, 950 (9th Cir. 2006) ("In many circumstances, a state court's determination of the facts without an evidentiary hearing creates a presumption of unreasonableness.") (citations omitted); *Nunes v. Mueller*, 350 F.3d 1045, 1055 (9th Cir. 2003), *cert. denied*, 543 U.S. 1038, 125 S.Ct. 808, 160 L.Ed.2d 605 (2004) ("[W]ith the state court having refused [petitioner] an evidentiary hearing, we need not of course defer to the state court's factual findings — if that is indeed how those stated findings should be characterized — when they were made without such a hearing."); *Killian v. Poole*, 282 F.3d 1204, 1208 (9th Cir. 2002), *cert. denied*, 537 U.S. 1179, 123 S.Ct. 992, 154 L.Ed.2d 927 (2003). *See also Weaver v. Thompson*, 197 F.3d 359, 363 (9th Cir. 1999); *Few v. Kerby*, 39 F.3d 1462, 1479 n. 24 (10th Cir. 1994). The Middle District of Florida ("MDF") district judge deferred to the state court's factual

findings, knowing there was no evidentiary hearing[2], a trespasser judge and employee of Defendant USFBOT who intervened when recusal was warranted[3], and a biased judge who issued a dispositive order after being recused[4].

## The Court failed to consider *de novo* the Plaintiff's Objections and Exceptions.

This case also presents an especially compelling example of a defective fact-finding process, where the facts "found" by this Court are based on untested assertions and defenses. Under 59(b)(3), the district judge was required to (*"must"*) consider *de novo* any objection to the magistrate judge's recommendation; however, the Court did not do so. The district judge merely accepted the recommendation, depriving DeBose of the opportunity to submit further evidence for its consideration or resubmit the matter to the magistrate judge with instructions. The record discloses that on March 29, 2023, the Magistrate issued its report and recommendations. The docket entry expresses that  venue is not proper in this Court and Plaintiff *"acted to intentionally circumvent an injunction order."* The Plaintiff responded, (Doc. 5), to the Court's Order to Show Cause, (Doc. 4), that she sought an Alternative Available Forum after being locked out of her jurisdiction. The Plaintiff stated she submitted her Complaint and RTSL to the Middle District of Florida ("MDF") and it refused to accept her Complaint but instead handed the Plaintiff a copy of the Injunction Order.  Based on the facts, the Plaintiff was not intentionally circumventing the injunction order but rather seeking to comply with the RTSL filing deadline.  DeBose was not required to waive her right to sue, particularly given the circumstances surrounding the appealed injunction order, concerning which this Court had notice.  As in *Hurles v. Ryan*, 650 F.3d 1301 (9th Cir. 2011), recusal was warranted where, *inter alia*, the trial  judge had improperly "injected" [him]self … transforming the

---

[2] In 17-CA-1652 and 19-CA-4473.
[3] Gregory P. Holder.
[4] Elizabeth G. Rice.

judge from "impartial dispenser of justice" to that of an "adversary". This intervenor/trespasser judge was a paid employee of USFBOT, had a disqualifying quid-pro-quo conflict not only with USFBOT but also the MDF district judge[5], and was inarguably the alter-ego of his Defendant employer.

On April 12, 2023, sometime around 7:00 a.m., DeBose mailed her Objections to the Magistrate's Report and Recommendations. DeBose's response included an Exhibit to put the Court on notice of the existence of contract evidence. Later that day at 1:58 p.m., FLPOLY emailed the agreements. On the basis of this agreement, USFBOT and its representatives have contended that the 2,725 emails in Florida Poly's (and USFBOT's / GTLAW's) possession are privileged. FLPOLY has not objected; neither has it complied under subpoena. USFBOT has been given a "no discovery" protective order and thus has not been required to comply. The agreements are evidence or they make a showing of indisputable proof that USF, its representatives, and Florida Poly agreed by way of contract on July 1, 2020 to retaliate against DeBose. Unfortunately, the documents could not be filed before the Court's order of dismissal and judgment. The Plaintiff hastened to file the Objections in 14 days because the Magistrate's Report and Recommendations emphasized or underscored:  **Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control**, (Doc. 24, NOTICE TO THE PARTIES, pg. 16). The 2,725 emails, the initial refusal by FLPOLY to make the provision of the contracts to DeBose contingent upon a charge, the contract/agreement documents themselves, and USFBOT's claim that emails are privileged are sufficient material facts to defeat dismissal and/or summary judgment. The issues in this case have never been previously litigated by any court of competent jurisdiction.

---

[5] Steven D. Merryday.

The appealed injunction orders by the MDF and Thirteenth Judicial Circuit Court are pending and should not be accorded deference.

This Court is bound to confront factual disputes relevant to this claim. The Court's resolution of DeBose's Title VII claim did not accord due process on claims that are predominantly factual ones. None of the alleged facts relied upon in the Magistrate's report are established by the record. To the contrary, DeBose provided evidence and argument to show the Court's decision is not solely a legal determination based on undisputed facts.  The Magistrate's report questioned DeBose's factual allegations," but failed to afford her a hearing or other opportunity to develop such factual evidence.

**The Court failed to hold required evidentiary hearing pursuant to Rule 72.**

The Court failed to hold a hearing before acting on the magistrate's report and recommendations to not only prejudice DeBose in the case but also under Rule 59(e) and on appeal. The record shall consist of the court file, including the transcript of the relevant proceedings before the magistrate and all depositions and evidence presented to the general magistrate. There are none. At the hearing on a party's exceptions, the court is bound by the magistrate's factual findings unless they are not supported by competent substantial evidence or are clearly erroneous. No discovery was permitted; however, a showing was made that the factual findings are not supported and are clearly erroneous.  The district judge can only consider the evidence that was previously presented to the magistrate. Again, no discovery was permitted and the contracts were not disclosed and emails were withheld in bad faith by USFBOT and FLPOLY.  A party cannot introduce new evidence to support their exception. While Plaintiff is uncertain as to whether this Florida Rule would apply, this Court  had notice of the existence of the evidence but  disregarded it and declined to preserve it. It was error and contradictory to the clear mandate of Title VII to protect the retaliatory, racist,

vitriolic, hateful institution(s) rather than DeBose, the victim of USFBOT's, FLPOLY's, and GTLAW's animus.

An appellate court reviews "De Novo" the district court's decision that the findings of fact are supported by competent, substantial evidence and are not clearly erroneous or giving both the magistrate and the district court the benefit of the presumption of correctness. The "Law of the Case" doctrine was manufactured and is perpetuated by the court's refusal to hold a hearing or make a reasonable inquiry into the facts. This doctrine should not be applied as part of a litigation scheme to protect invidious discrimination or where it would result in manifest injustice.

## The Manifest Injustice Exception Should be Applied and the Order / Judgment Set Aside.

The Eleventh Circuit has recognized narrow exceptions to the law-of-the-case doctrine, and, by implication, the mandate rule, see Amedeo, 487 F.3d at 830, where: "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to that issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *Joshi v. Fla. State Univ. Health Ctr.*, 763 F.2d 1227, 1231 (11th Cir. 1985) (quotation omitted). The clearly erroneous standard is met when "the legal error is beyond the scope of reasonable debate . . ." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1370-71 (11th Cir. 2003). In addition, in *Jenkins*, the court found a manifest injustice where an Alabama district court made a clearly erroneous finding that venue was proper in Alabama, and thus Alabama law would likely have been used to uphold a non-compete agreement that was contrary to the fundamental public policy of Georgia, where venue would have been proper. *See id.* at 1371-73. Thus, clear error presents a manifest injustice where the error would likely change the outcome of a case; and public policy concerns are relevant to a determination of manifest injustice. *See id.*

Undoubtedly, DeBose has been locked out while the courts are "locked in." The lock-in effect describes how decision makers (i.e. judges) get trapped or locked into a particular course of action.[6] Even when faced with information that an initial decision has not achieved just or fair results, the decision makers are biased towards continuing that course of action.[7] Thus, the lock-in effect introduces a systemic bias to subsequent decisions.[8] Internal and external pressures are applied to try to justify the harm that was allowed to occur, making it so subsequent judges are less likely to reverse course on the merits later in the case or understand how their actions facilitate or create new victims from uncorrected past behavior. This systematic bias creates injustice in our legal system.[9] For the reasons set forth herein, this Court should alter/amend its decision because it is based on a trail of bias and has racism as its foundation. The highly unusual facts of the conduct of the judges in DeBose's cases have in every instance denied her right to due process. The exceptional facts raise the probability of actual bias to an unconstitutional level.

**The case should be reopened and transferred to another available forum.**

The Court should transfer the case to another district court—even one outside of Florida—in the interest of justice. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977-78 (7th Cir. 2010). In *Research Automation, Inc.*, the court explained, [w]e "do not simply engage in a perfunctory rubber-stamping of the district court's decision," but we "give that decision substantial deference." *American. Hospital Supply Corp. v. Hospital Products Ltd.*, 780 F.2d 589, 594 (7th Cir. 1986) (citation and internal quotation marks omitted). This Court rubberstamped the Defendant's MTDS without an appropriate review. This Court rubberstamped the MDF district

---

[6] Kevin J. Lynch, *The Lock-in Effect of Preliminary Injunctions*, 66 Fla. L. Rev. 779 (2015).
[7] Id.
[8] Id.
[9] Id.

11

judge's injunction order though it was shown not to be supported by substantial competent evidence but an abuse of the district judge's inherent authority. This Court rubberstamped the Magistrate's Report and Recommendations though the Plaintiff timely filed objections and/or exceptions. The Circuits have largely held that failure to conduct de novo review of timely filed objections is reversible error. See *Orpiano v. Johnson*, 687 F.2d 44 (4th Cir. 1982). Again, DeBose timely filed objections. The objections were not strictly to legal issues raised but factual issues were challenged. Therefore, the Court erred to dispense with de novo review of the record. See e.g., *Braxton v. Estelle*, 641 F.2d 392 (5th Cir. 1981). Courts have also held de novo review to be unnecessary in analogous situations when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations. See, e.g., *United States v. Mertz*, 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964); *Pendleton v. Rumsfeld*, 628 F.2d 102 (D.C. Cir. 1980). The Plaintiff specifically challenged the magistrate's factual findings, particularly those that relied on the underlying facts in Injunction Order. The Court rubberstamped the magistrate's not-to-transfer decision and did not consider the manifest injustice to DeBose or the goals of Title VII to eradicate or root-out invidious discrimination. The law and the facts do not support a no-transfer dismissal. This case is sufficiently supported by the evidence to be transferred and DeBose given an opportunity to conduct discovery, amend her complaint, and join other parties.

**WHEREFORE,** Plaintiff respectfully asks the Court to allow the case to proceed or to be transferred to another federal district court.

**Submitted 4/21/2023**                                      Respectfully,

                                                             /s/ Angela DeBose
                                                             Angela DeBose

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April **21st**, 2023, the above and foregoing was served by US

postal mail for filing with the Clerk of the Court, which will send a notice of electronic filing to all

counsels of record.

*/s/ Angela DeBose*
Angela DeBose
1107 W. Kirby St.
Tampa, FL 33604
Ph. 813.932.6959
awdebose@aol.com

# EXHIBIT 1

**AMENDMENT 1**
**TO**
**PRIVATE ATTORNEY SERVICES CONTRACT**
**EXHIBIT A**

THIS AMENDMENT TO AGREEMENT ("Amendment") is made and entered effective as of the date it is fully executed by both parties and relates to the Agreement by and between The Florida Polytechnic University Board of Trustees ("University") and **GREENBERG TRAURIG, LLP** ("CONTRACTOR"), located at 101 E. Kennedy Blvd., Ste., 1900, Tampa, FL 33602-5148.

*WHEREAS,* the University entered into a Private Attorney Services Contract with Contractor for legal services dated May 5, 2020 (the "Agreement").

*WHEREAS,* the parties want to amend the Agreement Exhibit A.

*NOW, THEREFORE,* for and in good consideration of the mutual promises contained herein, the parties agree as follows:

1. The above recitations are true and correct and incorporated herein.
2. Section II of said Exhibit is hereby amended to include the following:

**II.   HOURLY BILLING SCHEDULE**
CONTRACTOR'S attorney and paralegal staff to be used under this AGREEMENT to include the following individuals at the hourly rates indicated:

| NAME: | HOURLY RATE: |
|---|---|
| Richard McCrea | $395.00 |
| Cayla M. Page | $250.00 |
| Gigi Carcamo | $125.00 |

The above rates may be adjusted if both parties agree and shall documented in writing by amendment to this AGREEMENT.

3. All other terms and conditions of the Agreement, including any amendments thereto, shall remain in full force and effect to the extent they are not in conflict with this Amendment.

IN WITNESS WHEREOF, the duly authorized representatives of the parties hereby execute this Amendment.

THE FLORIDA POLYTECHNIC UNIVERSITY
BOARD OF TRUSTEES

Laura Marrone    Digitally signed by Laura Marrone
                 Date: 2020.05.15 11:20:36 -04'00'
Procurement

Date: _____

GREENBERG TRAURIG, LLP

_____

Date: 5/15/20

Approved as to form & legality

_____

Florida Polytechnic University Attorney

**APPROVED**
By Alex Landback at 11:02 am, May 15, 2020

# EXHIBIT 2

**FLORIDA POLYTECHNIC UNIVERSITY**
*OFFICE OF THE GENERAL COUNSEL*
**PRIVATE ATTORNEY SERVICES CONTRACT**

This agreement is entered into by and between the Florida Polytechnic University Board of Trustees ("University"), a public body corporate of the State of Florida, located at 4700 Research Way, Lakeland, Florida 33805, and **GREENBERG TRAURIG, LLP** ("Contractor"), located at 101 E. Kennedy Blvd., Ste., 1900, Tampa, FL 332-5148.

The parties hereby agree as follows:

## A.   ENGAGEMENT OF THE CONTRACTOR

The University agrees to engage the Contractor and the Contractor agrees to perform the services set forth below in accordance with the terms of this agreement. The Contractor agrees that all services contracted for are to be performed solely by the Contractor and may not be subcontracted for or assigned without the prior written consent of the University.

## B.   SCOPE OF SERVICES

This agreement is intended to provide for representation by Contractor of University on a legal matter or multiple legal matters as authorized by the University. Each authorized matter will be set forth in the Authorization for Private Attorney Services ("Authorization"), incorporated as Exhibit A. The Contractor agrees to represent the University on all agreed upon matters detailed in the Authorization in accordance with the terms and conditions set forth in this agreement.

## C.   COMPENSATION-FEES

1. The University will be billed in accordance with the agreed upon Contractor billing rates for partners, associates, and paralegals as set forth within the applicable Authorization.
2. The University assumes and expects that Contractor will not provide lower billing rates to be used for any other client of Contractor, including non-profit clients, with the exception of pro bono clients or other similarly situated clients of Contractor. In the event it is determined that lower billing rates are in effect for any client of the Contractor, other than pro bono or other similarly situated clients, the rates charged to the University will be adjusted retroactively to reflect the lower billing rates.
3. No fees may be expended for work unless and until authorized by the University.
4. Billable hours will be measured in 6-minute increments. Compensation for attorney hours will be for actual time spent providing attorney services to the University.
5. Premium rates will not be paid for overtime work.
6. The University will compensate attorney time at no more than 50% of the hourly rates reflected in the attached Authorization while traveling when it is justified and the University approves it in writing in advance.
7. Fees incurred under this agreement will not exceed **$15,000.00** and any fees in excess of such amount will not be compensable unless authorized by the University in writing. Contractor will notify the University, in writing, if and when fees for billable services reach **$10,000.00**. Notification will be made as soon as practicable and prior to the next monthly invoice. Failure to comply with these provisions may result in non-payment.

**D.**   **COMPENSATION-COSTS**

1. Reimbursement of costs for such items as exhibits, transcripts, and witness fees requires prior oral or written authorization by the University and will be reimbursed based upon documented third-party vendor charges. The University will not pay any firm surcharges added to third-party vendor charges.

    i. Reimbursable costs will not exceed **$2,000.00**. Contractor must notify the University in writing when costs reach **$1,500.00**. Said notification must be made as soon as is practicable and prior to the next monthly invoice.

2. Routine expenses such as phone calls, faxes, postage, copy work, local travel expenses, library materials, local courier, photographs, word processing, computer-assisted legal research services (e.g. Westlaw, Lexis), and clerical or secretarial services are overhead and will not be separately compensated.

3. Non-routine office overhead expenses such as long-distance courier services, bulk mailings, bulk third-party copying, blueprints, and x-rays must be justified to the University and will be reimbursed based on documented third-party vendor charges as detailed above.

    i. If in connection with a matter these charges are expected to exceed **$1,000.00**, written approval from the University's contract administrator must be obtained by the Contractor, prior to the expenditure of funds. The Contractor must notify the University contract administrator if and when costs reach **$750.00**. Said notification must be made as soon as is practicable and prior to the next monthly invoice.

    ii. In-house bulk mailings and bulk copying expenses must be supported by usage logs or similar documentation. Firm surcharges are not reimbursable.

4. Expenses incurred for any travel that is directly and exclusively related to the professional services rendered under this agreement will not be compensated unless the costs are reasonable and approved in writing in advance by the University, in which event such expenses will be reimbursed by the University in accordance with section 112.061, Florida Statutes. For the purpose of computing travel expenses, the Contractor's place of business is that listed in the preamble of this agreement and all travel expenses will be computed on that basis.

5. The Contractor may only bill the University for a proportionate share of the cost of attending hearings or engaging in client representation of any type which is applicable to other clients.

**E.**   **INVOICES AND PAYMENT**

1. Contractor is responsible for any taxes due under this agreement. University will make payment within 30 days of receipt of a proper invoice. If University does not issue payment within 30 days of receipt of a proper invoice, University will pay to Contractor an interest penalty at the rate established pursuant to section 55.03(1), Florida Statutes if the interest exceeds $1.00.

2. A Vendor Ombudsman, whose duties include acting as an advocate for contractors (or vendors) who may be experiencing problems in obtaining timely payment(s), may be contacted at (850) 413-5516, or by calling the Department of Financial Services Consumer Hotline at 1-800-342-2762.

3. University may make payment to Contractor via the University's EFT/ACH payment process. Contractor must provide the necessary information to University upon request.

4.  If any other information is reasonably requested by the University's contract administrator, Contractor will include that information on the invoice.

5.  The Contractor may not pledge the University's credit or make the University a guarantor of payment or surety for any contract, debt, obligation, judgment, lien, or any form of indebtedness.

6.  The University's performance and obligation to pay under this agreement is contingent upon the legislature's annual appropriation, if the terms of this agreement extend beyond the current fiscal year.

**F.   ADMINISTRATION OF AGREEMENT**

1.  The parties' contract administrators are the people listed on the applicable Authorization.

2.  All necessary approvals referenced in this agreement must be obtained from the parties' contract administrators or their designees.

3.  This agreement and any renewals or amendments to it are governed by and construed under the laws of the State of Florida and venue for any actions arising out of this agreement will be in the state courts in Polk County, Florida.

**G.   STATUS REPORTING**

The Contractor will provide immediate notice to University's contractor administrator by electronic mail or telephone regarding significant case developments which will likely result in media inquiries or necessary and immediate action by the University.

**H.   OTHER AVAILABLE SERVICES**

Upon receiving approval from the University, the Contractor may use existing University agreements, when available and cost effective to acquire services (e.g., computer-assisted legal research) and the assistance of professionals (e.g., court reporters, expert witnesses) at reduced rates.

**I.   CONFIDENTIAL INFORMATION**

If Contractor is exposed to the University's confidential information, Contractor will keep such information confidential and will act in accordance with any guidelines and applicable laws (such as HIPAA, FERPA and the Gramm-Leach Bliley Act.)  Confidential information will not include information that is a public record pursuant to Florida law (Chapter 119, Florida Statutes).

**J.   PUBLIC RECORDS, COMPLIANCE WITH SECTION 119.0701, FLORIDA STATUTES.**

1.  **IF THE CONTRACTOR HAS QUESTIONS REGARDING THE APPLICATION OF CHAPTER 119, FLORIDA STATUTES, TO THE Contractor's DUTY TO PROVIDE PUBLIC RECORDS RELATING TO THIS CONTRACT, CONTACT THE CUSTODIAN OF PUBLIC RECORDS AT: (863) 874-8414, ogc@floridapoly.edu, Florida Polytechnic University, Attention: General Counsel, 4700 Research Way, Lakeland, FL 33805.**

2.   To the extent that Contractor meets the definition of "contractor" under section 119.0701, Florida Statutes, in addition to other contract requirements provided by law, Contractor must comply with public records laws, requirements to:

    a.   Keep and maintain public records required by University to perform the service.

    b.   Upon request from the University's custodian of public records, provide the University with a copy of the requested records or allow the records to be inspected or copied within a reasonable time at a cost that does not exceed the cost provided in this chapter or as otherwise provided by law.

    c.   Ensure that public records that are exempt or confidential and exempt from public records disclosure requirements are not disclosed except as authorized by law for the duration of the contract term and following completion of the contract if the Contractor does not transfer the records to University.

    d.   Upon completion of this agreement, transfer, at no cost, to University all public records in possession of Contractor or keep and maintain public records required by University to perform the service. If Contractor transfers all public records to the University upon completion of the contract, Contractor must destroy any duplicate public records that are exempt or confidential and exempt from public records disclosure requirements. If Contractor keeps and maintains public records upon completion of this agreement, Contractor must meet all applicable requirements for retaining public records. All records stored electronically must be provided to University, upon request from the University's custodian of public records, in a format that is compatible with the information technology systems of the University.

3.   All documents prepared pursuant to this agreement may be subject to Florida's Public Records Law. All documents pursuant to the agreement that constitute attorney work product, as defined in section 119.071(1)(d), Florida Statutes, must be marked with a notice stating that the information contained in that document is exempt from disclosure in accordance with the public records law. Failure to do so will not affect the status of such documents as work product. Contractor must become knowledgeable about Florida's public records and open meetings laws as well as University protocols relating to such laws and must comply in coordination with the University contract administrator. Refusal of the Contractor to allow public access to such records as required by law will constitute grounds for unilateral cancellation of this agreement and may result in civil penalties. All provisions under this section will survive termination of the agreement.

4.   Each attorney who is governed by this agreement to provide services for the University must, from the inception of the contractual relationship until at least four (4) years after the expiration or termination of the contract, maintain detailed current records, including documentation of all expenses, disbursements, charges, credits, underlying receipts and invoices, and other financial transactions that concern the provision of such attorney services.

5.   The University may respond to public records requests without any affirmative duty to give Contractor notice.

6.   The University may inspect the:

    i.   Financial records, papers, and documents of the Contractor that are directly related to the performance of the contract or the expenditure of state funds.

    ii.   Contractor's programmatic records, papers, and documents which the University determines are necessary to monitor the performance of this agreement or to ensure that the terms of this agreement are being met.

        a.   The Contractor must provide such records, papers, and documents

requested by the University within 10 business days after the request is made.

K.  **RELATIONSHIP OF THE PARTIES**

    1.    Contractor (as an entity) is an independent contractor. Non-attorney employees are not agents of the university and are solely contractors. Attorneys are agents of the university solely to the extent needed to perform services under this agreement or as otherwise required by the Rules Regulating the Florida Bar including the Rules of Professional Conduct.

    2.    Contractor will not use the University's name, trademarks, logos or marks without the University's prior, written approval except as necessary to fulfill services under this agreement.

    3.    Each party hereby assumes any and all risk of personal injury and property damage attributable to the negligent acts or omissions of that party and the officers, employees, and agents thereof. Contractor also assumes such risk with respect to the willful or negligent acts or omissions of Contractor's subcontractors or persons otherwise acting or engaged to act at the instance of Contractor in furtherance of fulfilling Contractor's obligations under the agreement.

L.  **TERM AND TERMINATION**

This agreement takes effect as of July 1, 2020 and end on June 30, 2021. The University may terminate this agreement by giving Contractor thirty (30) days written notice to Contractor, specifying the effective date of termination. If this agreement is terminated, the Contractor will be reimbursed for services satisfactorily performed subject to any damages sustained by the University. If this agreement is terminated, all finished or unfinished documents, data, studies, correspondence, reports, and other products prepared by or for the Contractor under this agreement will be made available to and for the exclusive use of the University.

M.  **NONDISCRIMINATION AND COMPLIANCE**

Contractor must comply with all applicable provisions of: (i) the Vietnam Era Veterans Readjustment Act of 1974; (ii) the Rehabilitation Act of 1973; (iii) U.S. Executive Order 11246, as amended; and, (iv) the rules, regulations, and relevant orders of the U.S. Secretary of Labor as well as state statutes and regulations, including University's regulations regarding nondiscrimination. Contractor and any authorized subcontractors must abide by the requirements of 41 C.F.R. §§ 60-1.4(a), 60-300.5(a), and 60-741.5(a). These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities and prohibit discrimination against all individuals based on their race, color, religion, sex, or national origin. Moreover, these and other regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, sexual orientation, national origin, protected veteran status, or disability. It is the Contractor's responsibility to determine if it is a covered contractor.

N.  **ENTIRE AGREEMENT**

This document, including any attachments, embodies the entire agreement of the parties. There are no other provisions, terms, conditions, or obligations. This agreement supersedes any and all previous oral or written communications, representations or agreements on this matter.

O.   **SPECIAL CONDITIONS**

1.  The Contractor will make affirmative efforts to achieve cost effectiveness by consolidating meetings, limiting travel, streamlining case processing, using forms, using the appropriate level of attorney or staff experience required by task, and taking other actions to improve efficiency.

2.  Multiple staffing at meetings, hearings, depositions, trials, etc., by the Contractor will not be compensated unless prior written approval from the University contract administrator has been obtained.

3.  Contractor agrees that all documents will be promptly returned at the termination of the Contractor's involvement in the case or matter at hand.

4.  Contractor must provide University's contract administrator access to all documents intended to be provided to third parties or filed with a court or a University or internal memoranda (by sending the documents directly or providing access to a portal) if requested. Similarly, Contractor must provide University contract administrator access to any final or as-filed documents if requested.

5.  All discovery, including depositions, document production, etc., will be coordinated by the University's contract administrator and Contractor's contract administrator except as University's contract administrator may instruct.

6.  University in-house staff will be used in the legal matter to the maximum extent possible except as otherwise determined by the University.

7.  The Contractor will not speak to the media or the public concerning the University or any matter governed by this agreement (or an authorization) unless directed in writing by the University contract administrator to do so and will refer all media inquiries to the University's contract administrator.

8.  Contractor represents and warrants that it is not on the Convicted Vendor List (see section 287.133(2)(a).

9.  Contractor will not be relieved of liability to the University for damages sustained by the University by virtue of any termination or breach of this agreement by the Contractor.

10. Nothing in this agreement may be construed as an indemnification of the Contractor by the University or as a waiver of sovereign immunity beyond that provided in section 768.28, Florida Statutes.

11. Renewals of this agreement are not automatic.

12. Anything that is produced by or developed in connection with this agreement will remain the exclusive property of the University and may not be copyrighted, patented, or otherwise restricted as provided by law; any works created pursuant to this agreement are works for hire. Neither the Contractor nor any other individual that renders services under this agreement will have any proprietary interest in any product(s) developed or produced under this agreement.

The duly authorized representatives of the parties hereby execute this agreement.

**University:**
THE FLORIDA POLYTECHNIC UNIVERSITY
BOARD OF TRUSTEES

By: Laura E. Marrone   Digitally signed by Laura E. Marrone
Date: 2020.07.29 09:51:50 -04'00'

[Associate] Director of Procurement

Date: _____

Approved as to form and legality:

_____

University ATTORNEY

**Contractor:**
GREENBERG TRAURIG, LLP

By: _____

Richard McCrea
Shareholder

Date: 7/28/20

# EXHIBIT 3

**FLORIDA POLYTECHNIC UNIVERSITY**
*OFFICE OF THE GENERAL COUNSEL*
**Authorization FOR**
**PRIVATE ATTORNEY SERVICES**
(EXHIBIT A)

## I.    SCOPE OF SERVICES

The Contractor will:

1.  Assist the University and its Office of the General Counsel with requested matters, specifically including Employment and Labor law pertaining to Florida Polytechnic University, Florida Polytechnic University Foundation and the respective Boards of Trustees and issues relating to human resources.
2.  Provide legal advice, upon request, to the UNIVERSITY'S Office of the General Counsel in connection with any additional matters authorized by the UNIVERSITY in accordance with this Agreement.
3.  Review and analyze legal issues and related materials concerning the matters and advice on recommended legal course.
4.  Provide legal advice, upon request, to the University's Office of the General Counsel in connection with any matters authorized by the University in accordance with this agreement.
5.  Review and analyze legal issues and related materials concerning the matter and advise on recommended legal course.
6.  Attend and participate in meetings, conference calls, or similar, and report on the status of the legal matters.
7.  Represent the University in litigation and pre-litigation, if and as warranted and requested.

## II.    HOURLY BILLING SCHEDULE

Contractor's attorney and paralegal staff to be used under this agreement include the following individuals at the hourly rates indicated:

|   | NAME: | TITLE | 2020 HOURLY RATE: |
|---|---|---|---|
| 1 | Richard McCrea | Attorney | $395 |
| 2 | Cayla M. Page | Attorney | $250 |
| 3 | Gigi Carcamo |  | $125 |
|   |  |  |  |
|   |  |  |  |

The above rates may be adjusted if both parties agree and will be documented in writing by amendment to this agreement.

## III.    CONTRACT ADMINISTRATORS

The following individuals are the Contract Administrators designated by the parties in connection with this agreement:

| University: | Contractor: |
|---|---|
| **Name:** Gina Delulio | **Name:** Richard McCrea |
| **Email:** rdeiulio@floridapoly.edu | **Email:** mccrear@gtlaw.com |
| **Phone:** (863) 874-8412 | **Phone:** (813) 318-5700 |

**AMENDMENT 1**
**TO**
**PRIVATE ATTORNEY SERVICES CONTRACT**
**EXHIBIT A**

THIS AMENDMENT TO AGREEMENT ("Amendment") is made and entered effective as of the date it is fully executed by both parties and relates to the Agreement by and between The Florida Polytechnic University Board of Trustees ("University") and **GREENBERG TRAURIG, LLP** ("CONTRACTOR"), located at 101 E. Kennedy Blvd., Ste., 1900, Tampa, FL 33602-5148.

*WHEREAS,* the University entered into a Private Attorney Services Contract with Contractor for legal services dated May 5, 2020 (the "Agreement").

*WHEREAS,* the parties want to amend the Agreement Exhibit A.

*NOW, THEREFORE,* for and in good consideration of the mutual promises contained herein, the parties agree as follows:

1. The above recitations are true and correct and incorporated herein.
2. The first sentence in Subsection C.7 is hereby deleted in its entirety and replace with the following: "Fees incurred under this AGREEMENT shall not exceed $30,000.00 and any fees in excess of such amount shall not be compensable unless authorized by the UNIVERSITY in writing.
3. All other terms and conditions of the Agreement, including any amendments thereto, shall remain in full force and effect to the extent they are not in conflict with this Amendment.

IN WITNESS WHEREOF, the duly authorized representatives of the parties hereby execute this Amendment.

THE FLORIDA POLYTECHNIC UNIVERSITY
BOARD OF TRUSTEES
_____
Procurement

Date: ___9/10/20___

GREENBERG TRAURIG, LLP
_____
Richard McCrea
Shareholder

Date: ___9/8/2020___

Approved as to form & legality

_____

Florida Polytechnic University Attorney



PRIORITY MAIL®

US POSTAGE PAID
$9.65

Retail

USPS
RATES
SERVICE

ADAMS ST
LAHASSEE FL 32301-7736

DELIVERY DAY:  04/24/23

C001

0 Lb 5.70 Oz

RDC 04

Origin: 33604
04/21/23
1183390604-28

USPS TRACKING® #

9505 5160 4868 3111 7359 63

PRESS FIRMLY TO SEAL

FLAT RATE ENVELOPE
POSTAGE REQUIRED

FROM:

Angela DeBose
1107 W. Kirby St.
Tampa, FL 33604

TO:

Northern District Court
Clerk's Office
111 N. Adams St.
Tallahassee, FL 32301

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments.
Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; July 2022; All rights reserved.